## Linda KNAPP, Plaintiff,

v.

## Douglas D. SMILJANIC, Eagle Property Management Corporation, and Sun Valley Apartments, Defendants.

### 92–C–885–C.

United States District Court,
W.D. Wisconsin.

March 29, 1994.

---

Jeffrey Spitzer–Resnick, Madison, WI, for Linda Knapp.

Charles H. Barr, Croen and Barr, Milwaukee, WI, for Douglas D. Smiljanic and Sun Valley Apartments.

Randy S. Parlee, Peterson, Johnson & Murray, S.C., Milwaukee, WI, for Economy Preferred Ins. Co.

## OPINION and ORDER

CRABB, Chief Judge.

This is a civil action for damages and declaratory relief. Plaintiff Linda Knapp is an African–American woman who receives financial assistance with her rent through a program known as Section 8, which is regulated and funded by the federal government and administered locally through the Dane County (Wisconsin) Housing Authority. Defendant Douglas D. Smiljanic is the resident agent of defendant Eagle Property Management and the owner of defendant Sun Valley Apartments, a large complex of rental units located in Fitchburg, Wisconsin. At all relevant times, defendants participated in the Section 8 program and received Section 8 rental assistance payments from the Dane County Housing Authority.

Plaintiff's suit against defendants was based on her allegation that defendants rejected her rental application when she tried to apply for an apartment for herself and her children at defendant Sun Valley Apartments after being told by a rental agent there that the complex accepted Section 8 vouchers. According to plaintiff, when she filled out a rental application and tendered a money order for the deposit, defendants' agent refused to accept the application, telling plaintiff, "We don't take Section 8." Plaintiff contended the rejection of her rental application was based on her race, in violation of state and federal housing laws, and on her status as a Section 8 voucher holder, in violation of 42 U.S.C. § 1437f(t).

The case was tried to a jury in October 1993. At the conclusion of the liability phase of the trial, the jury found that defendants had not discriminated against plaintiff on the basis of her race but that defendants had refused to accept her application because of her status as a holder of a Section 8 voucher. In the damages phase of the trial, the jury awarded plaintiff $95,000 in compensatory damages for the emotional distress she had suffered as a result of the rejection of her application. After judgment was entered for plaintiff, defendants filed post-verdict motions that are now before the court.

Defendants have moved for judgment as a matter of law or for a new trial, contending that (1) a damages remedy is not available for violations of § 1437f(t); (2) attorney's fees are not available for violations of § 1437f(t); (3) a reasonable jury could not reasonably have found defendants liable; (4) in the alternative, the jury's verdict on liability was against the great weight of the evidence; (5) the court erred in overruling defendants' objection to the admission of evidence regarding other Section 8 voucher holders whose rental applications were rejected by defendants; and (6) defendants were deprived of a fair trial by plaintiff's counsel's repeated references to other lawsuits brought against defendants. Defendants contend also that they should be granted a remittitur or a new trial on the ground that the jury's damage award was excessive. In addition, defendants contend that the court erred in granting the summary judgment motion of third-party defendant Economy Preferred Insurance Company on September 22, 1993. Defendants were granted a stay of enforcement of judgment pending disposition of these motions.

Plaintiff has advised the court that she is not seeking an award of attorney's fees. Therefore, I will not address defendants' contention that such fees are not available for violations of § 1437f. I conclude that it was error to allow the jury to consider awarding damages to plaintiff for the emotional damages she suffered and that the damage award must be vacated. I conclude, however, that plaintiff is entitled to nominal damages of $1.00 because she established that defendants breached their contract with the Dane County Housing Authority of which she was the third-party beneficiary. I do not agree with defendants that it was unreasonable and against the great weight of the evidence for the jury to find against defendants on the question of liability, that it was error to overrule defendants' objections to admission of evidence concerning Section 8 applicants whose rental applications were rejected, or that defendants were deprived of a fair trial by plaintiff's counsel's references to other claimants and actions brought against defendants. Finally, I conclude that it was not error to grant the motion for summary judg-ment of third-party defendant Economy Preferred Insurance Company.

## OPINION

### A. Section 1437f(t)

The Section 8 program is designed to assist low income families in securing affordable housing. It was added to the 1937 United States Housing Act in 1974, as part of the Housing and Community Development Act of 1974, Pub.L. No. 93–383, 88 Stat. 633 (Aug. 22, 1974). Under the original public housing program created by the housing act, the Department of Housing and Urban Development pays a rent subsidy directly to a public housing authority that houses low income families. Under the Section 8 program, the public housing authority issues either a certificate or a voucher directly to eligible families. (For simplicity's sake, I will refer only to vouchers, which differ from certificates primarily in the method used to compute the amount of rent paid to the landlord, *see* § 1437f(a), (b), (c) and (*o* ).) The amount of the voucher is based on a percentage of the family's income. The family may use the voucher for any housing owned by a private landlord who agrees to accept such vouchers. Using HUD funding, the local public housing authority pays the landlord the difference between the pre-determined tenant payment and the actual rent. Participation in the program by private landlords is voluntary. *See generally* 24 C.F.R. ch. 887.

Subsection (t) of § 1437f prohibits participating landlords from refusing to lease any available dwelling unit to a voucher holder when the "proximate cause of [the refusal] is the status of such prospective tenant as holder of such voucher."

### B. Availability of Damages for Violation of § 1437f(t)

In an order entered herein on July 20, 1993, I held that 42 U.S.C. § 1437f(t) creates an implied cause of action for persons who are denied housing solely because of their status as holders of Section 8 vouchers. Defendants note correctly that this does not end the inquiry into what relief is available

for violations of the statute. The United States Supreme Court has explained that "the question of what remedies are available under a statute that provides a private right of action is 'analytically distinct' from the issue of whether such a right exists in the first place." *Franklin v. Gwinnett County Public Schools,* —— U.S. ——, ——, 112 S.Ct. 1028, 1032, 117 L.Ed.2d 208 (1992) (quoting *Davis v. Passman,* 442 U.S. 228, 229, 99 S.Ct. 2264, 2268, 60 L.Ed.2d 846 (1979)). As a general rule, however, once an implied right of action has been found, courts are to "presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise." *Id.; see also Davis,* 442 U.S. at 246–47, 99 S.Ct. at 2277–78. "[A]bsent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin,* —— U.S. at ——, 112 S.Ct. at 1035.

■ 42 U.S.C. § 1437f(t) contains no clear direction limiting the availability of relief. Defendants contend that the legislative history and the context in which the statute was enacted lead to the conclusion that Congress never contemplated the availability of a damages award but intended private remedies to be limited to injunctive and declaratory relief. They set forth a number of grounds for this contention. First, Congress was concerned with maintaining the pool of low income housing for the Section 8 program. The creation of a damage remedy would run counter to this goal because it would act as a deterrent to program participation by private landlords. Second, when Congress enacted § 1437f(t), it was addressing the perceived problem that certain landlords were refusing unreasonably to rent to Section 8 beneficiaries. Its intent was to prevent them from doing so. Nothing in the legislative history indicates an intent to redress the damages a rejected applicant might incur. The drafters spoke of creating a private right of action to "prohibit" owners of subsidized rental housing from refusing to rent to Section 8 beneficiaries but said nothing about redressing the harms of such a refusal or obtaining compensation for damages incurred as a result of a rejection. *See* H.R.Rep. No. 100–122(I),

100th Cong., 1st Sess., pt. 1, at 32, *reprinted in* 1987 U.S.C.C.A.N. 3317, 3348.

Third, defendants argue, the "housing access provision" of the 1978 Housing Community Development Amendments of the United States Housing Act of 1937 that preceded the enactment of § 1437f(t) made no reference to a damage remedy. In the 1978 legislation, Congress instructed the Secretary of the Department of Housing and Urban Development to require anyone who purchased a housing project from HUD to agree not to refuse to lease an apartment to Section 8 certificate holders solely because of their status as Section 8 assistance recipients. Nothing was said about remedies, but it was implicit that they would be limited to injunctive relief, since HUD would not have suffered any monetary damage. Defendants cite passages from the 1987 legislative history of § 1437f(t) indicating that § 1437f(t) was intended to "clarify [Congress's] long-standing intention in favor of private enforcement." 1987 U.S.C.C.A.N. 3369. Defendants argue that the use of "clarify" and "longstanding intention" demonstrates an intent not to alter the fundamental character of the right created in 1978, which did not include a damage remedy.

Defendants argue also that in enacting § 1437f(t) in 1987, Congress would have contemplated that only equitable relief would be available as relief for Section 8 voucher or certificate holders, both because the act contains no provision for damages and because at the time the act was passed, no court had ever awarded damages for the violation of any provision of the Housing Act of 1937 or ever suggested that such damages might be available. The one federal appellate court that had implied a private right of action had stated expressly that it was of the opinion that a damage award would not be available. In *Howard v. Pierce,* 738 F.2d 722 (6th Cir. 1984), the court had held that injunctive and declaratory relief were sufficient remedies for plaintiffs who had sued HUD to prevent it from violating the Housing Act. In dictum, the court had noted that an award of monetary relief could have an adverse effect upon HUD's primary enforcement responsibilities. *Id.* at 730. *See also Conille v. Sec-*

*retary of Housing and Urban Dev.,* 840 F.2d 105, 113 (1st Cir.1988) (no implied damages remedy under Massachusetts law against HUD where the state law was more stringent than the National Housing Act, 12 U.S.C. § 1701 *et seq.*); *Smith v. Washington Heights Apartments, Ltd.,* 794 F.Supp. 1141, 1144 (S.D.Fla.1992) (finding no implied cause of action under the Act); *Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd.,* 792 F.Supp. 1566, 1573 (S.D.Fla.1992) (low income tenants had no implied right under United States Housing Act or National Housing Act to sue for damages caused by deterioration of housing facility); *Bronston v. Kemp,* 722 F.Supp. 372, 374 (S.D.Ohio 1989).

Defendants have a strong argument for reading § 1437f(t) as overcoming the general presumption of the availability of all appropriate relief that applies to a statute containing a private right of action. On the other hand, the statute does not include an express statement precluding all available relief. Moreover, many of defendants' arguments relate to the impropriety of inferring a damages remedy in cases brought by HUD or brought against HUD. Different considerations are at stake in cases brought against HUD and those brought against private landlords.

Defendants argue that because § 1437f(t) was enacted in response to the reluctance of courts to find private causes of action under the United States Housing Act of 1937 and its amendments, Congress understood that courts might be just as reluctant to interpret the available remedies expansively and for that reason would have specified the availability of a damages remedy had it intended to provide for one. It *is* odd that Congress would spell out in the legislative history its intent to authorize private causes of action under § 1437f(t) rather than make explicit provision for them in the statute itself; the essence of an *implied* right of action is that it is not created intentionally or consciously. *Franklin v. Gwinnett County Public Schools,* — U.S. at ——, 112 S.Ct. at 1039 (Scalia, J., concurring). If the legislative history is to be believed, that is not the case here. The House Report provided that

The Committee is very concerned about the problems experienced by holders of Section 8 certificates and vouchers in securing units in which to use these portable subsidies ... Section 147 of the bill creates an enforceable right for applicants that would prohibit owners that receive Section 8 subsidies for any other units in the project from refusing to rent a unit....

1987 U.S.C.C.A.N. 3348. It is understandable that Congress would omit a listing of the intended remedies for causes of action it does not know it had created. It is less understandable why Congress would omit any reference to remedies for actions it intended to authorize, particularly if it was concerned about the courts' grudging recognition of such causes of action, or for that matter, why Congress would not make the cause of action explicit in the statute rather than leave it to the legislative history. Even so, I cannot say that these anomalies rebut the presumption that all rights are available. The rule remains that "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief...." *Franklin,* — U.S. at ——, 112 S.Ct. at 1035.

Finally, relying on *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), defendants argue that because § 1437f(t) was enacted pursuant to the spending clause of the United States Constitution, an award of money damages is not available to plaintiff. *Pennhurst* held only that remedies for violations of statutes enacted pursuant to Congress's spending clause power were limited when the violations were *unintentional.* It would be unfair to the institution receiving federal funds to make it liable for a monetary award when it lacks notice that its conduct is violative of the applicable law. The notice problem does not arise in cases in which the violation is intentional; persons who violate a known duty intentionally cannot contend that they did not have notice. *Franklin,* — U.S. at ——, 112 S.Ct. at 1037. The jury's finding in this case makes it clear that defendants cannot rely on any exception for unintentional or inadvertent acts. No basis exists for concluding that the jury found defendants'

discrimination to be the "honest mistake" that defendants maintain it was.

When the jury found that defendants rejected plaintiff's application because she was a holder of a Section 8 voucher, it found that defendants acted intentionally. Although the verdict is not explicit on this point, no other conclusion can be drawn reasonably from the evidence. Defendants' insistence on characterizing their violation of § 1437f(t) as unintentional seems to be based on their view that the jury finding did not rest on plaintiff's testimony that defendants' agent rejected plaintiff's rental application because defendants did not accept Section 8 voucher holders. In defendants' version, the jury based its decision on evidence that established the following: defendants' agent told plaintiff that defendants required all its tenants to sign defendants' own lease rather than the special Section 8 lease required by the housing authority; plaintiff understood this explanation as a rejection of her application because she assumed that if the special Section 8 lease were not signed, she could not obtain the Section 8 assistance that would enable her to rent one of defendants' units. Thus, defendants argue, the rejection of plaintiff was a misunderstanding and not an intentional act.

In light of the significant damages the jury awarded to plaintiff, it is improbable that the jurors adopted defendants' view of the evidence. It is far more likely that the jury believed plaintiff's testimony that she was told point blank by defendants' rental agent: "We don't take Section 8."

■■■■ I conclude that damage awards are *available* for violations of § 1437f(t). I turn then to the distinct question whether plaintiff has proved in this case that she incurred damages that are compensable. The question has a subpart: how to characterize the violation of a statute and evaluate the scope and nature of an appropriate damages award. In the absence of explicit guidance from the legislature, it is necessary to decide whether the particular violation is in the nature of a breach of contract or whether it is a tort, and if a tort, what kind of tort. In my view, defendants' action is essentially a breach of contract and plaintiff's entitlement is to the damages that flow reasonably from such a breach.

■■■■ The Housing Act requires participating landlords to rent to Section 8 voucher holders. This is a contractual obligation that landlords incur when they enter into agreements with the local housing authorities. In return for a guarantee of a portion of the rent charged, they agree to accept a certain number of Section 8 voucher holders. Section 8 voucher holders are third-party beneficiaries of the contracts between landlords and housing authorities. *See, e.g., Holbrook v. Pitt,* 643 F.2d 1261 (7th Cir.1981) (recognizing families certified as Section 8 voucher holders as third-party beneficiaries of the Section 8 contracts executed between the United States Department of Housing and Urban Development and owners of multifamily dwellings whether or not the families are occupying Section 8 housing or merely hoping to do so). Under § 1437f(t), third-party beneficiaries may sue landlords for breaches of the landlords' contracts with the local housing authority. Like all persons injured by breach of contract who sue for damages, rejected Section 8 voucher holders must prove that the damages they suffered were reasonably foreseeable by the wrongdoer. *See generally* E. Allan Farnsworth, *Farnsworth on Contracts,* §§ 12.1–12.2 (1990).

At trial, the only damages on which plaintiff adduced evidence that the jury could consider were the emotional and mental injuries she alleged she had suffered as a result of the rejection of her application. I erred in allowing these injuries to be considered by the jury. As a matter of law, such injuries were not the natural and probable result of a breach of defendants' contract and hence, were not reasonably foreseeable by defendants.

■■■■ The usual remedy for breach of contract is "the benefit of the bargain," which protects the injured party's "expectation" interest and is intended to put the injured party in as good a position as she would have been in had the contract been performed. *Farnsworth on Contracts* 147. To avoid the difficult problems in ascertaining causation that may arise in attempting to predict what

the injured party's position would have been, the law requires that the loss be foreseeable and proved with reasonable certainty. *Id.* at 148. The foreseeability limitation grew out of the realization that "liability for unforeseeable loss might impose upon an entrepreneur a burden greatly out of proportion to the risk that the entrepreneur originally supposed was involved and in the corresponding benefit that the entrepreneur stood to gain." *Id.* at 241. That Congress intended to treat landlords as entrepreneurs is evident from the structure of the Section 8 program. The program is voluntary and includes incentives to persuade landlords to participate. (Whether those incentives are sufficient is a matter of some controversy, but one that is not relevant to this discussion.) Unlike the Fair Housing Act, 42 U.S.C. § 3604, which embodies a national condemnation of housing discrimination based on race, color, religion, sex or national origin, the Section 8 program includes no moral component other than the ordinary duty of fair dealing that accompanies any contract. The obligation not to refuse to rent to a Section 8 voucher holder arises from execution of the Section 8 agreement and acceptance of Section 8 benefits and not from a national moral consensus.

Although plaintiff did not prove any foreseeable damages as a consequence of defendants' breach of their contract with the Dane County Housing Authority, she is entitled to nominal damages of $1.00. "The victim of a breach of contract is always entitled to nominal damages if he proves a breach but no damages." *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.,* 908 F.2d 1363, 1372 (7th Cir.1990) (citing E. Allan Farnsworth, *Farnsworth on Contracts* 838–39 (1982) and Dan B. Dobbs, *Remedies* 817–18 (1973)).

 The issue of defendants' breach of contract was not explored at trial; plaintiff tried her claim on the implicit assumption that defendants' rejection of her application was a tortious action rather than a breach of contract. Although I believe that defendants' act is properly characterized as a breach of contract, I will consider the possibility that it should be viewed as a tort. The tort most applicable is that of intentional infliction of emotional distress. To succeed on a claim of intentional infliction of emotional distress, a plaintiff has to show that the defendant intentionally caused her severe emotional distress and did so by means of extreme and outrageous conduct. *Restatement (Second) of Torts,* §. 46. "Extreme and outrageous" means the infliction of such severe distress that no reasonable person could be expected to endure it. *Id.,* cmt. j. Ordinarily, the conduct must be so outrageous as to disturb a person of ordinary sensibilities. Fowler V. Harper, Fleming James, Jr., & Oscar S. Gray, *The Law of Torts,* § 9.1 (2d ed. 1986).

If in this case the jury had found that defendants had rejected plaintiff's application because of her race, the outrageous character of the act could be presumed simply from the fact of the rejection. Congress has made it plain that discrimination based on race is invidious and repugnant to the ideals of this country. As the Court of Appeals for the Seventh Circuit has observed, "[h]umiliation can be inferred from the circumstances [of a racially motivated refusal to sell a residence in a white area]...." *Seaton v. Sky Realty Co.,* 491 F.2d 634, 636 (7th Cir.1974). Although Congress captioned § 1437f(t), "Nondiscrimination against certificate holders and voucher holders," it made no findings of the moral iniquity of the denial of Section 8 rental applications similar to those it made in the Fair Housing Act, § 3604, in connection with denials of rental opportunities based on color, national origin, or religion. Congress has never declared the rejection of a Section 8 application improper except when it is practiced by landlords participating in Section 8 programs. The same discrimination against Section 8 voucher holders is entirely lawful when practiced by landlords who do not participate in the programs. From this, I conclude that a denial of a lease to a Section 8 beneficiary is unfortunate, unpleasant, and an undermining of the goals of the federal housing programs, but it is not an invidious act that in and of itself rises to the level of tortious infliction of emotional distress.

As plaintiff herself testified, she called numerous apartment complexes looking for landlords who would accept Section 8 vouch-

ers and was turned down by all of them before she came to the Sun Valley Apartments. In these circumstances, defendants' rejection of her Section 8 application cannot be characterized as extreme and outrageous conduct causing a person of ordinary sensibilities to experience severe emotional distress. Put another way, no voucher holder of ordinary sensibilities can claim that the legal status of the landlord turns an otherwise common (albeit unpleasant) event into one of such magnitude as to cause her cognizable injuries of mental and emotional distress. A person of ordinary sensibilities might suffer irritation, even anger, as well as frustration and disappointment over such an event, but not damages meeting the legal definition of severe emotional distress. This is not because the fact of rejection is inconsequential to the applicant; it is demeaning to be denied clean, safe housing simply because of one's status as a recipient of federal assistance. Rather, the fact of rejection is more akin to an act that is "definitely inconsiderate and unkind," but not cognizable in tort, *Restatement (Second)*, § 46 cmt. d, than it is to an act that is cognizable because it is "so extreme in degree, as to go beyond all possible bounds of decency...." *Id.*

■ Plaintiff did not seek injunctive relief. At the time of trial, she had secured another subsidized apartment. She has expressed no interest in living at the Sun Valley Apartments. However, another person in plaintiff's position who had proven a breach of contract would be entitled to the remedy of specific performance to put her in the same position she would have occupied had the contract not been breached. That is the only remedy, other than nominal damages and declaratory relief to which plaintiff would be entitled on the present record. Moreover, it is the remedy most in keeping with Congress's intent in enacting § 1437f(t). The purpose of the section is to obtain housing for eligible families. Section 8 applicants can obtain prompt judicial relief by suing for the injunctive remedy of specific relief and asking for a preliminary injunction.

### C. *Jury Finding of Liability*

■ Although defendants argue that the evidence did not support the jury's finding of intentional refusal to accept plaintiff's rental application, the record refutes their contention. The jury was entitled to believe that defendants' rental agent told plaintiff point blank that defendants did not accept applications from Section 8 voucher holders. Defendants' arguments to the contrary rest largely on their assertions that plaintiff's testimony was so incredible that no reasonable jury could have believed it. I do not agree that the testimony can be so characterized.

### D. *Erroneous Trial Rulings*

Defendants believe that it was error to permit plaintiff to introduce evidence of other Section 8 applicants whose rental applications were rejected and that defendants were deprived of a fair trial when plaintiff's counsel made improper reference to other claimants and actions brought against defendants. I dealt with these matters at trial. Nothing in defendants' submissions convinces me that the rulings were erroneous.

### E. *Motion to Reconsider Order of September 22, 1993*

■ Defendants have moved under Fed. R.Civ.P. 59(e) for reconsideration of the September 22, 1993 order in which I granted the motion for summary judgment of third-party defendant Economy Preferred Insurance Company. Economy contends that the motion is inappropriate and should not be considered. However, Economy concedes that a party may argue under Rule 59(e) that a court has made a "manifest error of law." *See Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986). Because defendants are making this very argument, their motion is proper. It would not be moot, even in view of the vacating of the damages award, if it affects the insurance company's liability for defendants' defense costs.

In the September 22 order, I held that Economy had no duty to defend or indemnify defendants because the insurance policy Economy had issued provided coverage only for "occurrences" and plaintiff Knapp had not alleged an "occurrence." "Occurrence" was defined in the policy as "an accident, including continuous or repeated exposure to

substantially the same general harmful conditions." I concluded that the act of turning down plaintiff's application because of her status as a Section 8 voucher recipient was a volitional, purposeful act and thus not an accident. This conclusion is fortified by the view expressed in this opinion that defendants' wrong amounted to a breach of its contractual agreement with the housing authority that injured a third-party beneficiary. I rejected defendant's call for a reading of the word "occurrence" that would provide coverage for intentional acts with unintended or unexpected results, such as the severe emotional injuries plaintiff claimed to have incurred. I noted that in the cases cited by defendants, the policies at issue defined "occurrence" differently from their policy. In the policies in the cited cases, "occurrence" is defined to mean an accident resulting in injuries "neither expected nor intended from the standpoint of the insured." *See, e.g., Patrick v. Head of Lakes Coop. Elec. Ass'n,* 98 Wis.2d 66, 68, 295 N.W.2d 205, 207 (Ct.App. 1980).

Even if an "occurrence" can be an intentional act with unexpected results, Economy would not be required to defend or indemnify defendants for the damages arising from their rejection of plaintiff's rental application. This is because defendants did intend the result of rejecting plaintiff's application: that she would be unable to rent an apartment at Sun Valley. I do not understand defendants to be contending that they did not expect plaintiff to incur some damages as a result of the breach of their contractual duties to plaintiff. Indeed, defendants concede that it was foreseeable that plaintiff would suffer at least "minor, temporary annoyance" as a result of the rejection but not "[s]ignificant, long-term depression." The relevant fact is that defendants intended to prevent plaintiff from obtaining the apartment she wanted and would have expected that thwarting plaintiff in this way would cause her some harm, however minor. (For purposes of this discussion I am assuming that the policy's "bodily harm" provision applies to emotional injuries.) It is immaterial whether defendant intended to cause plaintiff the *degree* of harm she claimed to have suffered.

Defendants go too far in arguing that an insured is covered if he commits an intentional act and expects to cause a given result as long as he does not intend to bring about the degree of harm that accompanies that result. Accordingly, even if I were to agree that the word "occurrence" as it appears in defendants' policy includes intentional acts that cause unexpected damage, I would hold that Economy did not have a duty to defend or indemnify defendants. Defendants' motion for reconsideration and reversal of the September 22, 1993 order will be denied.

### ORDER

IT IS ORDERED that the motion for judgment as a matter of law of defendants Douglas D. Smiljanic, Eagle Property Management Corporation and Sun Valley Apartments is GRANTED with respect to the award of compensatory damages, which is VACATED; in all other respects, it is DENIED; plaintiff is awarded $1.00 in nominal damages for defendants' breach of their contract with the Dane County Housing Authority of which plaintiff was the third-party beneficiary; IT IS DECLARED that defendants Douglas D. Smiljanic, Eagle Property Management Corporation and Sun Valley Apartments violated 42 U.S.C. § 1437f(t) by refusing to accept plaintiff Linda Knapp's rental application; and *defendants' motion for reconsideration of the order granting summary judgment to third-party defendant Economy Preferred Insurance Company is DENIED.*