Barbara **UEBELACKER**, Plaintiff,

v.

**PAULA ALLEN HOLDINGS, INC. d/b/a Allen and Associates, Workstream USA, Inc., and Workstream Inc., Defendants.**

No. 06–C–0316–C.

United States District Court, W.D. Wisconsin.

Nov. 2, 2006.

Joseph S. Goode, Whyte Hirschboeck Dudek, S.C., Madison, WI, for Defendants.

## OPINION AND ORDER

BARBARA B. CRABB, District Judge.

This is a civil suit for monetary relief arising out of a contract between plaintiff Barbara Uebelacker and defendant Allen and Associates for job search services. Plaintiff alleges three claims in her amended complaint: (1) defamation; (2) breach of contract; and (3) fraudulent misrepresentation under Wis. Stat. § 100.18. Plaintiff pursues remedies against defendant Allen and Associates as well as the company's corporate parent, Workstream USA, Inc., and its corporate grandparent, Workstream Inc. Jurisdiction is present under 28 U.S.C. § 1332.

This case is before the court on a motion to dismiss defendants Workstream USA, Inc. and Workstream Inc. as improper parties to this action. In addition, all defendants have moved to dismiss all of plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(6). In the alternative, should plaintiff's defamation claim survive, defendants move under Fed.R.Civ.P. 12(f) to strike plaintiff's request for punitive damages.

Defendants' motion to dismiss the amended complaint will be granted in part and denied in part. First, defendants Workstream USA, Inc. and Workstream Inc. will not be dismissed from this action because plaintiff has alleged sufficient facts at this stage of the proceedings to hold these defendants liable for the actions of their subsidiary, defendant Allen and Associates. Second, plaintiff will be permitted to pursue her defamation claim because she has alleged facts from which it may be inferred that defendant Allen and Associates' typographical error was a communication capable of defaming her. Third, plaintiff will be allowed to proceed on her breach of contract claim because her alleged consequential damages should have been reasonably foreseeable to defendant Allen and Associates. Fourth, plaintiff's fraudulent misrepresentation claim will be dismissed because defendant Allen and Associates did not make the representations plaintiff alleges and because the representations the company did make are not untrue, deceptive or misleading. Finally, because plaintiff has alleged facts supporting her contention that the allegedly defamatory statement was made with express malice, defendants' motion to strike plaintiff's request for punitive damages will be denied.

When considering a motion to dismiss for failure to state a claim, a court must accept as true the well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir.1990). Exhibits attached to a complaint are treated as part of the pleadings. Fed.R.Civ.P. 10(c). For the sole purpose of deciding the motion to dismiss, I draw the following facts from the allegations of plaintiff's amended complaint and the attached exhibits.

## ALLEGATIONS OF FACT

### A. *Parties*

Plaintiff Barbara Uebelacker is a citizen of the state of Wisconsin. She holds a bachelor's degree in journalism and political science from the University of Wisconsin–Whitewater and has about 26 years'

experience in newspaper reporting and editing. From July 14, 1999 to November 25, 2005, she held the position of Managing Editor of the *Janesville Gazette,* a daily newspaper.

Defendant Allen and Associates is a corporation formed under the laws of Florida with its principal place of business in Maitland, Florida. Defendant Workstream USA, Inc. is a corporation formed under the laws of Delaware with its principal place of business in Maitland, Florida. Defendant Workstream Inc. is a corporation formed under the laws of Canada with its principal place of business in Ottawa, Canada or Maitland, Florida. Defendant Workstream Inc. is the Canadian corporate parent of defendant Workstream USA, Inc. and defendant Allen and Associates is the wholly owned subsidiary of defendant Workstream USA, Inc. All three defendants share the same address in Maitland, Florida and operate web-based businesses selling services to Wisconsin residents and companies.

Defendant Allen and Associates maintains a website at www.allenandassociates.com, which offers job search services to both companies and individuals. The website's domain name is registered by defendant Workstream Inc., which owns all rights in the website including its copyright.

### B. *Job Search Program*

On June 16, 2005, a representative of defendant Allen and Associates contacted plaintiff and offered her job search services. On June 22, 2005, plaintiff submitted a down payment for a package of services, the "Job Search Program." On June 28, 2005, she paid the $1100 program fee.

The services plaintiff purchased included preparation of a broadcast letter that would be mailed to 100 of plaintiff's potential employers, known as target companies. The broadcast letter, describing plaintiff's qualifications, accomplishments and objectives, was to be mailed after plaintiff reviewed and approved the letter. Defendant Allen and Associates' program description stated that "Quality satisfaction [was] guaranteed."

Plaintiff received a document titled, "User Agreement & Understanding of Services," which outlined defendant Allen and Associates' policies and generally described the elements of a successful job search. According to the agreement, a successful job search involved contacting "key decision makers of companies" to find non-advertised jobs. The agreement provided that, "Company research in the non-advertised job market does not provide a listing of current job openings, instead, it provides a marketing tool to develop business contacts, and provides you with an opportunity to 'sell' the contribution you can make to a company." The agreement further stated, "Even though neither we nor any other company can guarantee employment, our staff is committed to working with you throughout your job search, providing you with the necessary materials and with the ongoing guidance and support you require." Finally, the agreement summarized defendant Allen and Associates' policy applicable to its document preparation services:

> Should an error occur on documents that you have already approved, and that Allen and Associates has gone to final print with, your documents can be reprinted for a nominal charge. If an error occurs which is the fault of Allen and Associates; we will immediately reprint your documents at no additional cost to you.

Plaintiff also received a manual explaining defendant Allen and Associates' services in greater detail and containing instructions for conducting a successful job search. According to the manual:

The broadcast letter is usually sent in place of a resume, yet contains enough information to create the interest to secure an interview. Like any mail campaign, the measure of success for your broadcast letters will be the results you receive.

The manual stated, "The Creative Writing Staff of Allen and Associates spends a great deal of time preparing your materials in the most effective marketing manner possible." Finally, the manual described the results defendant Allen and Associates' services were capable of achieving:

Each year we have thousands of clients who send their new resume or broadcast letter to companies they had previously contacted using their old materials—companies that had either rejected or ignored them. In a large percentage of these cases, this new contact, using professional marketing materials and professional follow-up techniques, created enough interest to result in interviews and job offers.

On June 28, 2005, a "Campaign Support Manager" informed plaintiff that her broadcast letter was ready for review. Plaintiff edited the letter and submitted her revision on June 29, 2005. On July 12, 2005, plaintiff requested one additional revision to her broadcast letter. Around this time, plaintiff purchased additional services for $620, including broadcast letters directed to 85 additional target companies. On July 14, 2005, plaintiff received an email notifying her that she would receive a CD containing her finalized documents. On July 25, 2005, plaintiff received the CD containing her documents in the form she had approved.

Around this time, defendant Allen and Associates mailed a broadcast letter to 200 of plaintiff's target companies. Although plaintiff had not actually signed the letter, the letter included a reproduction of plaintiff's signature. The first sentence of the letter contained a typographical error and read: "Currently seeking new challenges in a 70 E.R1 B,EWI.5381 position within your organization, I am a detail-oriented professional possessing 20 years of related leadership experience." The sentence should have read: "Currently seeking new challenges in a public relations position within your organization, I am a detail-oriented professional possessing 20 years of related leadership experience."

On July 26, 2005, plaintiff received responses from three target companies. One company emailed, "Barbara, Received your letter but I am not sure what a 70 E.R1 B,EWI.5381 does. Maybe you could fill me in and we could go from there." Another company returned a copy of plaintiff's broadcast letter with a circle around the typographical error, the word "proofread" written next to the error, and an underline and question mark near a phrase in the letter, "executive metro editor." A third company sent a form explaining the procedure to apply for a job along with a copy of plaintiff's broadcast letter.

Subsequently, plaintiff informed defendant Allen and Associates that it had ruined her reputation with 200 potential employers. Defendant Allen and Associates' Director of Client Relations apologized to plaintiff and agreed to refund plaintiff's money. On August 4, 2005, plaintiff received a check for $1720, a full refund of the money she had paid.

## OPINION

### A. *Improper Parties*

Defendants Workstream USA, Inc. and Workstream Inc. contend that they should be dismissed from this case because they are improper parties to plaintiff's action. The amended complaint and attached exhibits make clear that plaintiff's claims arise out of a contract between her and

defendant Allen and Associates. It says nothing about any interaction with either defendant Workstream USA, Inc. or defendant Workstream Inc. Therefore, it appears that plaintiff is seeking to hold these defendants liable for the actions of their subsidiary, defendant Allen and Associates.

 A basic tenet of corporate law is that subsidiaries and parent corporations are designed to be legally separate from one another. *Berndt v. Fairfield Resorts, Inc.,* 337 F.Supp.2d 1120, 1130–31 (W.D.Wis.2004). Parent companies are shielded from liability for a subsidiary's actions through a "corporate veil." *Id.* at 1131. Piercing the corporate veil is a task that should be undertaken by a court only reluctantly. *Consumer's Co-op. of Walworth County v. Olsen,* 142 Wis.2d 465, 474, 419 N.W.2d 211, 213 (1988). Nonetheless, piercing is appropriate "if corporate affairs are organized, controlled and conducted so that the corporation has no separate existence of its own and is the mere instrumentality of the shareholder and the corporate form is used to evade an obligation, to gain an unjust advantage or to commit an injustice." *Id.* at 476, 419 N.W.2d at 214 (citing *Wiebke v. Richardson,* 83 Wis.2d 359, 363, 265 N.W.2d 571, 573 (1978)).

 In her amended complaint, plaintiff alleges that:

(1) Defendant Allen and Associates is a wholly owned subsidiary of defendant Workstream USA, Inc.

(2) All three defendants share the same address in Maitland, Florida.

(3) All rights to the Allen and Associates website are owned and copyrighted by defendant Workstream Inc.

 For now, these allegations are sufficient to retain defendants Workstream USA, Inc. and Workstream Inc. as parties to this action. The Federal Rules of Civil Procedure provide for a system of notice pleading, which requires only that the plaintiff set out a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A complaint need not contain all of the facts that will be necessary to prevail at trial. *Hoskins v. Poelstra,* 320 F.3d 761, 764 (7th Cir.2003). At this stage of the proceeding, dismissal is appropriate only if it is clear beyond doubt that plaintiff can prove no set of facts to warrant piercing of the corporate veil that shields defendants Workstream USA, Inc. and Workstream Inc. from liability for the actions of their subsidiary, defendant Allen and Associates. At the very least, plaintiff's allegations illustrate a link among defendants, from which it is reasonable to infer that the parent corporations may exert some control over their subsidiary. Plaintiff should be afforded an opportunity to determine the extent of this control through discovery. Because it is possible plaintiff will be able to prove facts to warrant piercing the corporate veil, defendants Workstream USA, Inc. and Workstream Inc. will not be dismissed from this action.

### B. *Defamation*

 Plaintiff's contends that defendant Allen and Associates defamed her when it mailed a broadcast letter containing a typographical error to 200 of her prospective employers. In Wisconsin, the elements of a defamation claim are (1) a false statement concerning another (2) communicated by speech, conduct, or in writing to someone other than the person defamed (3) that is unprivileged and is defamatory. *Hart v. Bennet,* 2003 WI App. 231, ¶ 21, 267 Wis.2d 919, 672 N.W.2d 306 (2003). The "statement" that is the subject of a defamation action need not be a direct affirmation, but may also be an implication. *Mach v. Allison,* 2003 WI App 11, ¶ 12, 259 Wis.2d 686, 656 N.W.2d 766 (2002). A communication is defamato-

ry if it tends to harm one's reputation so as to lower that person in the estimation of the community or deter third persons from associating or dealing with the person. *Waldo v. Journal Co.*, 45 Wis.2d 203, 207, 172 N.W.2d 680, 682 (1969).

■■■ Whether a particular communication is capable of a defamatory meaning is a question of law. *Lathan v. Journal Co.*, 30 Wis.2d 146, 153, 140 N.W.2d 417, 421 (1966). The legal standard for determining whether a statement or implication is capable of conveying a defamatory meaning is whether it is reasonably capable of conveying a defamatory meaning to the ordinary mind and whether the meaning ascribed by the plaintiff is a natural and proper one. *Meier v. Meurer*, 8 Wis.2d 24, 29, 98 N.W.2d 411, 414 (1959). "The words must be reasonably interpreted and must be construed in the plain and popular sense in which they would naturally be understood in the context in which they were used and under the circumstances they were uttered." *Frinzi v. Hanson*, 30 Wis.2d 271, 276, 140 N.W.2d 259, 261 (1966). If a communication is capable of a defamatory meaning, the jury must decide whether the communication was actually understood to be defamatory by its recipient. *Id.* It follows that a motion to dismiss a claim of defamation is only appropriate if the communication cannot reasonably be considered defamatory under the circumstances in which it was made.

■■■ Defendant Allen and Associates contends that the typographical error plaintiff alleges cannot be a false statement because it is really a "non-statement," a string of computer nonsense that neither says anything about the plaintiff and is not sufficiently factual to be proven either true or false. However, this argument fails to consider the possibility that the alleged error is actionable because it *implies* false information about the plain-

tiff. Viewing the allegations in the light most favorable to plaintiff, the error implies that she is a sloppy writer and a careless editor who failed to proofread her broadcast letter before mailing it to potential employers. This allegedly false implication is sufficient to support the first element of a claim of defamation. Similarly, the second element of the claim is satisfied because the implicitly false statement was communicated in writing to 200 potential employers.

■■■ With respect to the third element of plaintiff's claim, the false implication arising from the typographical error is clearly capable of a defamatory meaning. The purpose of plaintiff's broadcast letter was to advertise to potential employers her qualifications as a successful newspaper editor. The error could fairly and reasonably convey to recipients of the letter that plaintiff is in fact a careless, incompetent or unqualified editor. In the context of a letter seeking employment in the field of editing, such an implication is clearly capable of harming plaintiff's professional reputation and deterring potential employers from associating with her. Whether plaintiff's potential employers actually ascribed a defamatory meaning to the error cannot be determined on a motion to dismiss. At this stage of the pleadings, however, it is sufficient that the error is capable of a conveying a defamatory implication about plaintiff.

■■■ Plaintiff contends she is entitled to punitive damages because defendant Allen and Associates' failure to "avoid the known risk of gross typographical errors [was] willful, wanton and reckless." Dkt. # 2, ¶¶ 48, 50. In a defamation action involving private individuals, the standard for recovery of punitive damages is that the defendant must have acted with express malice. *Calero v. Del Chemical Corp.*, 68 Wis.2d 487, 506, 228 N.W.2d 737,

748 (1975). Defamatory statements made with express malice are those motivated by "ill will, spite, envy, revenge, or other bad or corrupt motives." *Id.; Polzin v. Helmbrecht,* 54 Wis.2d 578, 588, 196 N.W.2d 685, 690 (1972). A claim for punitive damages should be dismissed only if it is clear that the complaint fails to allege facts sufficient to state a claim for punitive damages. *Wangen v. Ford Motor Co.,* 97 Wis.2d 260, 308, 294 N.W.2d 437, 462 (1980). Although it seems more likely that defendant Allen and Associates' failure was inadvertent rather than motivated by express malice, petitioner has stated a valid claim for punitive damages. Her allegations that defendant Allen and Associates' conduct was "willful, wanton and reckless" clearly meet the required standard of express malice.

Because plaintiff has alleged facts supporting the three elements of a claim of defamation, defendants' motion to dismiss the claim will be denied. Defendants' motion to strike plaintiff's claim for punitive damages will be denied as well.

### C. *Breach of Contract*

#### 1. *Direct breach*

 Plaintiff's second claim is that defendant Allen and Associates breached its contract with her directly and by breaching the duty of good faith and fair dealing implicit in every contract. To state a claim for breach of contract, plaintiff must allege (1) the existence of a contract creating obligations flowing from defendant to plaintiff; (2) a breach of those obligations; and (3) damages from the breach. *Northwestern Motor Car, Inc. v. Pope,* 51 Wis.2d 292, 296, 187 N.W.2d 200, 203 (1971). To be enforceable, the obligations arising from the contract must be definite or reasonably certain. *Farnsworth, McKoane & Co. v. N. Shore Sav. & Loan Ass'n,* 504 F.Supp. 673, 675–76 (E.D.Wis.1981). If they are enforceable, the plaintiff is entitled to all damages that are the natural and probable result of the

breach of a contractual obligation. *Knapp v. Smiljanic,* 847 F.Supp. 1428, 1434 (W.D.Wis.1994). In other words, a plaintiff cannot recover for damages not reasonably foreseen by the breaching party. *Id.* As a matter of law, damages resulting from mental and emotional distress are not recoverable in a breach of contract action. *Id.; Marlatt v. Western Union Telegraph Co.,* 167 Wis. 176, 178, 167 N.W. 263, 264 (1918).

 Plaintiff has alleged facts sufficient to support the first element of her breach of contract claim, the existence of a contract with defendant Allen and Associates. She alleges that defendant Allen and Associates offered her its job search services and that she accepted the offer and paid defendant Allen and Associates $1,720 for its assistance.

 With respect to the second element of plaintiff's claim, neither the amended complaint nor the attached exhibits clarify the nature and extent of defendant Allen and Associates' contractual obligations to plaintiff. Plaintiff relies upon a number of statements within documents she received from defendant Allen and Associates (including the User Agreement and job search manual) that she contends obligated the company to perform its services in specific ways. Three of those statements, which are representative of the type of statements plaintiff references, read as follows:

(1) The broadcast letter is usually sent in place of a resume, yet contains enough information to create the interest to secure an interview. Like any mail campaign, the measure of success for your broadcast letters will be the results you receive.

Dkt. # 2, Exh. D, at 10.

(2) [O]ur staff is committed to working with you throughout your job search,

providing you with the necessary materials and with the ongoing guidance you require.

Dkt. # 2, Exh. C, at 1.

(3) The Creative Writing Staff of Allen and Associates spends a great deal of time preparing your materials in the most effective marketing manner possible.

Dkt. # 2, Exh. D, at 2.

The first statement merely provides general information about defendant Allen and Associates' services. Therefore, it does not impose any definitive obligation on the company. In contrast, the second two statements obligate defendant Allen and Associates to work with the plaintiff generally and to prepare certain materials for her. From the amended complaint and attached exhibits, it is difficult to discern what was meant by phrases such as "a great deal of time" and "most effective marketing manner possible," or to determine with reasonable certainty the extent of defendant Allen and Associates' contractual obligations.

Nevertheless, the essence of plaintiff's breach of contract claim is that at the least, defendant Allen and Associates was obligated to provide a product, the broadcast letter, as part of its job search services. The letter the company provided included a typographical error. Whether that error constitutes a material breach of the contract cannot be determined without more facts establishing the nature of the parties' bargain. It may turn out that defendant Allen and Associates' statements concerning the quality of its services are too vague and indefinite to be enforceable contract terms. At this stage, however, it is enough that plaintiff has alleged that defendant Allen and Associates breached its contractual obligations by failing to perform its services as promised and that she was damaged as a result.

With respect to the third element of plaintiff's claim, defendant Allen and Associates contends that it fails because her alleged damages were not foreseeable. Plaintiff alleges that she suffered actual and consequential damages, including mental and emotional stress, as a result of defendant Allen and Associates' breach. Defendant Allen and Associates points out that plaintiff recovered her actual damages when she was refunded the purchase price of $1,720 and her remaining consequential damages are too speculative, vague and subjective to be reasonably considered a natural and probable result of the breach.

Defendant Allen and Associates is correct that Wisconsin law does not permit recovery for alleged mental and emotional stress in a breach of contract action. *Knapp*, 847 F.Supp. at 1434, and *Marlatt*, 167 Wis. at 178, 167 N.W. at 264 (1918). However, plaintiff's other consequential damages are recoverable as long as they were foreseeable. *Kempfer v. Automated Finishing, Inc.*, 211 Wis.2d 100, 564 N.W.2d 692, 705 (1997). Plaintiff alleges that her professional reputation has been harmed and her employment opportunities have been diminished as a result of the breach. It is reasonably foreseeable that a typographical error in a letter designed to broadcast plaintiff's qualifications as a successful newspaper editor could damage plaintiff's professional reputation and make it more difficult for her to find employment in her field. Although plaintiff may not be able ultimately to prove her consequential damages to the requisite level of certainty, it would be premature to dismiss her claim for damages at this stage.

Because plaintiff has alleged sufficient facts to support her claim of breach of contract, defendants' motion to dismiss the claim will be denied.

## 2. Breach of the implied duty of good faith

 Wisconsin law recognizes that every contract imposes an obligation of good faith in its performance. *Estate of Chayka*, 47 Wis.2d 102, 107, 176 N.W.2d 561, 564 (1970). A party may be liable for breach of the implied duty of good faith even though all the terms of the contract have been fulfilled. *Foseid v. State Bank of Cross Plains*, 197 Wis.2d 772, 796, 541 N.W.2d 203, 212 (Ct.App.1995). The duty to act in good faith excludes a variety of types of conduct characterized as involving "bad faith." *Id.* at 796, 541 N.W.2d at 213. Bad faith has been characterized as "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Id.* at 797, 541 N.W.2d at 213. However, the implied duty of good faith may not be used to "block use of terms that actually appear in the contract." *Kham & Nate's Shoes No. 2, Inc., v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir.1990). In other words, if a contract expressly provides a party with certain rights, exercising those rights cannot amount to a breach of the implied duty of good faith. Under Wisconsin law, to state a claim for breach of duty of good faith, a plaintiff must allege facts "that can support a conclusion that the party accused of bad faith has actually denied the benefit of the bargain originally intended by the parties." *Zenith Insurance Co. v. Employers Insurance*, 141 F.3d 300, 308 (7th Cir.1998).

Defendant Allen and Associates contends plaintiff's claim must fail because plaintiff is using the implied duty of good faith to block an express provision of the parties' agreement. That provision, included in the User Agreement, states:

If an error occurs which is the fault of Allen and Associates; we will immediately reprint your documents at no additional cost to you.

Dkt. # 2, Exh. C, at 2. Defendant Allen and Associates contends that because the parties specifically contemplated the possibility of errors in documents prepared by the company, defendant's inadvertent error was not a breach of the implied duty of good faith. In addition, defendant Allen and Associates relies on *Schaller v. Marine Nat'l Bank*, 131 Wis.2d 389, 388 N.W.2d 645 (Ct.App.1986), to argue that the implied duty of good faith is limited where the non-breaching party has the ability to protect itself from harm. Because plaintiff could have protected herself harm by allowing defendant Allen and Associates to fix its error as provided by the User Agreement, defendant contends she does not have a claim under the implied duty of good faith.

These arguments are not persuasive. Although the error provision may have provided plaintiff with one remedy in the event her documents contained an error, the provision was not reserved as plaintiff's exclusive remedy. Although the User Agreement provided expressly that defendant Allen and Associates could not be held liable if plaintiff's current employer became aware of her job search efforts, no similar provision afforded the company a right to be free from liability for making errors in plaintiff's documents.

Second, in *Schaller*, the court did not lay down a general rule that the implied duty of good faith is inapplicable where the non-breaching party has the ability to protect itself from harm. In that case, a plaintiff sued a bank for failing to honor its overdraft checks or to provide notice that the checks would be dishonored. *Id.* at 394, 388 N.W.2d at 647. The court distinguished plaintiff's case from *K.M.C. Co. v.*

*Irving Trust Co.,* 757 F.2d 752 (6th Cir. 1985), in which the court held that the obligation of good faith may have imposed upon a bank a duty to notify its customer before refusing to advance funds up to the established credit limit. *Id.* at 403, 388 N.W.2d at 651. The court noted that unlike the customer in *K.M.C.,* Schaller could have avoided harm by better monitoring the status of his bank account. *Id.* In that case, plaintiff's ability to protect himself from harm was merely one factor supporting the conclusion that the bank violated no duty of good faith. *Id.* at 404, 388 N.W.2d at 652.

▆ In this case, viewing the allegations in the light most favorable to plaintiff, it is clear that plaintiff has stated a claim for breach of the implied duty of good faith. Although defendant Allen and Associates provided a possible remedy for errors it might make, it did not contract out of its implied duty of good faith altogether. That duty could include reasonable efforts to minimize the risk of errors in the documents it prepares. Plaintiff's allegation that the error in her broadcast letter had the effect of denying her the benefit of her bargain by damaging her reputation instead of facilitating her job search is sufficient to state a cause of action for breach of the implied duty of good faith. Whether the circumstances giving rise to the error amount to a breach of that duty and whether plaintiff could have taken actions to minimize her harm are factual considerations that cannot be determined in the context of a motion to dismiss. Therefore, defendants' motion to dismiss plaintiff's claim of breach of the implied duty of good faith will be denied.

### D. *Fraudulent Misrepresentation*

▆ In her third claim, plaintiff alleges that certain representations by defendant Allen and Associates violated Wis. Stat. § 100.18(1). To state a claim under

the statute, a plaintiff must allege that (1) the defendant made advertisements, announcements, statements or representations to the public relating to the purchase of merchandise; (2) the advertisements, announcements, statements or representations were untrue, deceptive, or misleading; and (3) plaintiff sustained a pecuniary loss because of the advertisements, announcements, statements or representations. *Tietsworth v. Harley–Davidson, Inc.,* 2004 WI 32, ¶ 39, 270 Wis.2d 146, 677 N.W.2d 233 (2004). A statement is untrue if it is false, while a statement is deceptive or misleading "if it causes a reader or listener to believe something other that what is in fact true or leads to a wrong belief." *Id.,* ¶ 85.

▆▆ Plaintiff has attached as exhibits copies of her communications with defendant Allen and Associates and materials she received from them. From plaintiff's brief, it appears that all the documents relevant to her fraudulent misrepresentation claim are included in these exhibits. Exhibits attached to the pleadings are treated as part of the pleadings. Fed. R.Civ.P. 10(c). Although courts do not presume that a plaintiff means to adopt every word in its exhibits, attachments trump contradictory allegations. *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n,* 366 F.Supp.2d 792, 796 (W.D.Wis.2005).

In her amended complaint, plaintiff alleges that defendant Allen and Associates made three representations:

(1) "It would provide her with a marketing tool to develop business contacts and the opportunity to 'sell' the contribution she could make to prospective employers."

(2) "Her Broadcast Letter would use 'professional marketing materials' and 'professional follow-up techniques' to result in interviews and job offers."

(3) "Quality satisfaction [was] guaranteed."

Plaintiff further alleges that these representations are untrue, deceptive and misleading and that she has been harmed as a result.

Plaintiff's attached exhibits make clear that the first two alleged representations are actually derived from statements within two documents she received from defendant Allen and Associates. One document, the User Agreement, states:

(1) Company research in the non-advertised job market does not provide a listing of current job openings, instead, it provides a marketing tool to develop business contacts, and provides you with an opportunity to "sell" the contribution you can make to a company.

Dkt. # 2, Exh. C, at 1. Another document, the job search manual, provided:

(2) Each year we have thousands of clients who send their new resume or broadcast letter to companies they had previously contacted using their old materials—companies that had either rejected or ignored them. In a large percentage of these cases, this new contact, using professional marketing materials and professional follow-up techniques, created enough interest to result in interviews and job offers.

Dkt. # 2, Exh. D, at 2.

Comparing plaintiff's allegations with these actual statements, it is clear that defendant Allen and Associates did not make the first two representations exactly as plaintiff alleges. Instead, plaintiff appears to be contending that the representations as set forth in her complaint are to be implied from the statements defendant Allen and Associates actually made. Mere implication, however, does not amount to the use of false, deceptive or misleading words as required under Wis. Stat. § 100.18(1). Therefore, because the attached exhibits contradict plaintiff's first

two alleged representations, the first element of a § 100.18(1) claim has not been met and the claim fails.

■ Furthermore, the actual statements themselves would be insufficient to support the second element of a § 100.18(1) claim. In her response brief, plaintiff clarifies the essence of her claim, namely, that defendant Allen and Associates' statements are misleading "because they [led] her to believe her professional reputation would be, if not enhanced, at least not harmed by Defendant's actions." However, when the statements are read in the context of the documents of which they are a part, they contradict the allegation that the statements are either deceptive or misleading. First, the User Agreement stated explicitly that defendant Allen and Associates could not guarantee employment. Second, the document provided:

Should an error occur on documents that you have already approved, and that Allen and Associates has gone to final print with, your documents can be reprinted for a nominal charge. If an error occurs which is the fault of Allen and Associates; we will immediately reprint your documents at no additional cost to you.

Dkt. # 2, Exh. C, at 1–2. These statements clearly informed plaintiff of the potential for errors in documents prepared by defendant Allen and Associates and, implicitly, of the potential for harm caused by those errors. Therefore, the statements contradict the allegation that defendant Allen and Associates deceived or misled plaintiff into believing that there was no risk of error and no risk of harm in using their services.

■ Finally, with respect to the third alleged representation, none of the exhibits plaintiff has submitted contains the statement, "Quality satisfaction [was] guaranteed." However, plaintiff alleges

that this statement appeared in a description of defendant Allen and Associates' services. Even taking the allegation to be true, however, such a statement would not be actionable under Wis. Stat. § 100.18(1). "Quality satisfaction guaranteed" is a classic example of commercial "puffery" on which no reasonable person would rely. Puffery has been defined as "the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined." *Tietsworth,* 2004 WI 32, ¶ 41, 270 Wis.2d at 171, 677 N.W.2d at 245. As a matter of law, statements amounting to puffery are not actionable under Wis. Stat. § 100.18(1). *Williams v. Aztar Indiana Gaming Corp.,* 351 F.3d 294, 299 (7th Cir.2003) (statement that "As always, our top priority is simply this: to ensure your complete, 100 satisfaction" amounts to sales puffery) and *Tietsworth,* 2004 WI 32, ¶ 43, 270 Wis.2d at 172, 677 N.W.2d at 246. ("premium quality" constitutes puffery). Therefore, plaintiff's fraudulent misrepresentation claim based on her third alleged representation must also fail.

In conclusion, because at two of the alleged representations were not actually made by defendant Allen and Associates, because the exhibits attached to plaintiff's complaint contradict any allegation that actual statements made are misleading and because the third alleged representation is non-actionable commercial puffery, plaintiff's claim of fraudulent misrepresentation must fail as a matter of law. Defendants' motion to dismiss this claim will be granted.

### ORDER

IT IS ORDERED that the motion to dismiss filed by defendants Allen and Associates, Workstream USA, Inc. and Workstream Inc. is

1. DENIED with respect to plaintiff's claims against defendant Allen and Associates for defamation and breach of contract;

2. GRANTED with respect to plaintiff's claim against defendant Allen and Associates for fraudulent misrepresentation; and

3. DENIED with respect to the request of defendants Workstream USA, Inc. and Workstream Inc. to be dismissed from this lawsuit.

FURTHER, IT IS ORDERED that the motion to strike plaintiff's request for punitive damages filed by defendants Allen and Associates, Workstream USA, Inc. and Workstream Inc. is DENIED.