*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CV-0895

EARTH ISLAND INSTITUTE, APPELLANT,

V.

THE COCA-COLA COMPANY, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2021-CA-001846-B)

(Hon. Maurice A. Ross, Trial Judge)

(Argued November 28, 2023                    Decided August 29, 2024)

*Kim E. Richman*, with whom *P. Renée Wicklund* was on the briefs, for appellant.

*Steven A. Zalesin*, with whom *Anthony T. Pierce*, *Miranda A. Dore*, *Jonah M. Knobler*, and *Jane Metcalf* were on the brief, for appellee.

*Caroline S. Van Zile*, Solicitor General, with whom *Brian L. Schwalb*, Attorney General for the District of Columbia, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Arjun P. Ogale*, Assistant Attorney General were on the brief, for the District of Columbia as *amicus curiae* in support of appellant.

*Philip S. Goldberg* and *Cary Silverman* filed a brief on behalf of the National Association of Manufacturers as *amicus curiae* in support of appellee.

*Jeremy J. Broggi*, *Boyd Garriott*, *Andrew R. Varcoe*, *Janet Galeria*, *Stacy Papadopoulos*, and *Joseph Aquilina* filed a brief on behalf of the Chamber of

Commerce of the United States of America and the Consumer Brands Association as *amici curiae* in support of appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and BECKWITH and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*: Earth Island Institute appeals the dismissal of its suit against the Coca-Cola Company, brought under the D.C. Consumer Protection Procedures Act, D.C. Code §§ 28-3901 to 28-3913 ("CPPA"). Earth Island alleges that Coca-Cola engages in deceptive marketing that misleads consumers into thinking that its business is environmentally sustainable, or at least that it is currently making serious strides toward environmental sustainability. In fact, in Earth Island's telling, the sheer scale on which Coca-Cola relies on single-use plastics in its packaging—and the scale on which it intends to continue using them—renders it an environmental blight and a fundamentally unsustainable business. At a more granular level, Coca-Cola touts its efforts to increase the recyclability of its products and to use more already-recycled material when making those products. Those statements, Earth Island argues, mask the reality that recycling is not a viable means of mitigating the environmental harm that Coca-Cola inflicts via its mass production of single-use plastics—less than ten percent of recyclable plastics are in fact recycled in the United States. Earth Island's claims amount to what is sometimes called greenwashing: companies deceptively billing themselves as environmentally friendly, in an effort to generate profits, when they are in fact far from it.

Coca-Cola moved to dismiss Earth Island's complaint for failure to state a claim. The trial court granted the motion, ruling (1) that Coca-Cola's statements were, at most, statements about its future goals, and such aspirational statements are not actionable under the CPPA, (2) that Coca-Cola's statements were not about "goods or services," but were instead more generally about its corporate ethos, and (3) that under the CPPA, a plaintiff cannot allege that a defendant has made a misleading statement by assembling a "mosaic" of the defendant's statements that, if taken in isolation, would not support such a claim.

We reverse. Earth Island has stated a facially plausible misrepresentation claim, and none of the trial court's three bases for dismissal fatally undermines it. On the first point, even aspirational statements can be actionable under the CPPA because they can convey to reasonable consumers that a speaker is taking (or intends to take) steps that at least have the potential of fulfilling those aspirations. Earth Island alleges that Coca-Cola neither takes nor intends to take any such steps, and if that is correct, then its representations could mislead reasonable consumers. On the second point, Coca-Cola's various claims about its plastic packaging are very much statements about its "goods and services," a term that the CPPA defines broadly to include "any and all parts of the economic output of society, at any stage or related . . . in the economic process." D.C. Code § 28-3901(7). And on the third

point, the CPPA does not require that misleading representations be contained in a single statement in order to be actionable; a series of statements can in combination be misleading even when, taken individually, they fall short of that. While we caution that a litigant cannot unfairly strip isolated statements out of their context and then cobble them together to form an unrepresentative tapestry of what has been conveyed, that caveat does not rescue the trial court's dismissal here.

Earth Island has plausibly alleged that Coca-Cola's statements, when viewed in their surrounding context, mislead consumers into believing that it is an environmental steward, when it is in fact an environmental scourge. Whether Earth Island can ultimately substantiate those claims is a different question for another day. For pleading purposes, Earth Island's complaint survives a motion to dismiss.

## I. FACTS AND PROCEDURAL BACKGROUND

In reviewing a trial court's dismissal of a complaint under Rule 12(b)(6), we accept the plaintiff's allegations as true. *Grayson v. AT&T Corp.*, 15 A.3d 219, 228-29 (D.C. 2011) (en banc). While the parties largely agree on the underlying facts, where they disagree we present the facts as Earth Island alleges them.

*Earth Island's complaint*

Earth Island alleges that Coca-Cola generates more plastic waste than any other company in the world, to the tune of 2.9 million metric tons of plastic waste per year. In recent years, Coca-Cola has made efforts to increase the recyclability of its products, to use more recycled materials in its own products, and to champion those efforts in apparent attempts to assuage consumers' environmental concerns. Earth Island contends that these recycling efforts are the proverbial lipstick on a pig—recycling is a woefully ineffectual mechanism for mitigating plastic pollution on the scale that Coca-Cola produces it. There is nothing that Coca-Cola could do, short of vastly cutting back or eliminating its plastic production, that could render it anything that even approaches an environmentally sustainable company, or so Earth Island alleges.

Coca-Cola nonetheless represents itself as working toward environmental sustainability, despite no serious intention of doing the one thing that could actually achieve that goal: severely scaling down its plastic production. Earth Island highlights a smattering of Coca-Cola's statements that it argues deceive consumers into mistakenly believing that Coca-Cola is taking steps to substantially mitigate its environmental harms, when it is not. All but one of these statements appear on (1) Coca-Cola's consumer-facing website, www.coca-colacompany.com, (2) in a

2019 "business and sustainability report" linked to on that same website, or (3) in Coca-Cola's official Twitter (now "X") feed. The website has seven prominent banners at the top of its main page to help navigate the site, beginning with "OUR COMPANY," "BRANDS," and third among them, "SUSTAINABILITY." We start with the two most concrete statements, in which Coca-Cola touts some fairly specific goals it has set for itself:

- "Make 100% of our packaging recyclable globally by 2025. Use at least 50% recycled material in our packaging by 2030." (website, retrieved June 2021)

- "Part of our sustainability plan is to help collect and recycle a bottle or can for every one we sell globally by 2030." (tweet, Feb. 2020)

Earth Island also highlights a number of Coca-Cola's additional statements that are more vague. These include:

- "We act in ways to create a more sustainable and better shared future. To make a difference in people's lives, communities and our planet by doing business the right way." (website, retrieved June 2021)

- "Scaling sustainability solutions and partnering with others is a focus of ours." (tweet, April 2019)

- "Business and sustainability are not separate stories for The Coca-Cola Company—but different facets of the same story." (tweet, April 2019)

- Coca-Cola is "committed to creating a World Without Waste by taking responsibility for the packaging we introduce to markets and working to reduce ocean pollution." (website, retrieved Oct. 2018)

- Coca-Cola's chairman and chief executive says that he is "reminded of the power of our people to make a difference, to serve our communities and to constantly work to shape a more sustainable business." (2019 report)

- "Because our company is in so many communities globally, we can share our best practices. We can collaborate with governments, communities, the private sector, and NGOs to help develop more effective recycling systems that meet each community's unique needs." (2019 report)

- "The interconnected global challenges of packaging waste and climate change have made this a focus that we are taking a leadership position on." (website, retrieved June 2021)

- "We're using our leadership to achieve positive change in the world and build a more sustainable future for our communities and our planet." (2019 report)

Coca-Cola also co-signed one pertinent statement that was issued by the American Beverage Association:

- "Together, we're committed to getting every bottle back. . . . Our goal is for every bottle to become a new bottle, and not end up in oceans, rivers, beaches and landfills. . . . This unprecedented commitment includes . . . [p]artnering with [other organizations] to improve recycling access, provide education to residents and modernize the recycling infrastructure in communities across the country." (American Beverage Association's website, retrieved June 2021)

Summarizing these statements, Earth Island alleges that they "give consumers the impression that Coca-Cola is taking unprecedented and serious steps to 'take responsibility' for its own plastic pollution; increase bottle collection rates; and ultimately reimagine patterns of plastic consumption by developing new bottle technology." In fact, it alleges, Coca-Cola "is far from what consumers would

understand to be a sustainable business," and it "greatly overstates the efficacy of recycling in addressing the plastics crisis."

Coca-Cola does not dispute that it "uses a great deal of packaging, some of which inevitably ends up in the natural environment" and that there is a substantial "amount of work it has left to do" to address its "environmental challenges." But in its view, it is taking steps to meet those challenges so that its representations to the same effect are not misleading. There is thus no real dispute about the thrust of Coca-Cola's representations to consumers; in a nutshell, Coca-Cola represents that it is working toward environmental sustainability. Where the parties disagree is whether those representations give consumers a false impression of Coca-Cola's current and anticipated environmental impact on the ground.

Earth Island sued Coca-Cola under the CPPA's provisions prohibiting, among other things, "misrepresent[ing] . . . a material fact which has a tendency to mislead" and "fail[ing] to state a material fact," or "us[ing] innuendo and ambiguity as to a material fact," in a way that "tends to mislead" consumers. D.C. Code §§ 28-3904(e)-(f-1). It contends that Coca-Cola is not taking the steps necessary to meet its concrete benchmarks of (1) making 100% of its packaging recyclable by 2025, (2) using 50% recycled material in its packaging by 2030, and (3) recycling a bottle or can for every one it sells by 2030. And, it argues, Coca-Cola has a "history

of making sustainability promises and failing to deliver on them," which is "a history that is bound to repeat itself given that none of Coca-Cola's business plans or lobbying efforts would enable it to actually achieve its alleged recycling goals." Also, Earth Island alleges that only about 8.7% of all recyclable plastics in the United States are in fact recycled, so that even if Coca-Cola could hit the benchmark of making 100% of its packaging recyclable by 2025, it would still be "push[ing] ineffective 'recycling' as a viable tool to assuage their environmental pollution." Its complaint boils down to the claim that, as long as Coca-Cola is not working to eliminate (or at least dramatically reduce) its use of single-use plastics, it is not in any meaningful way working to be more sustainable, so that its statements are inconsistent with its practices.

*The trial court dismisses the complaint*

The trial court granted Coca-Cola's motion to dismiss under Rule 12(b)(6). The court offered three reasons for concluding that Earth Island had not pled a plausible claim for relief under the CPPA. First, it reasoned that the purported misrepresentations were "aspirational in nature," with "no promises or measurable datapoints that would render [them] true or false," making them non-actionable under the CPPA. Second, it noted that the purported misrepresentations did not appear "on the product label" itself, but instead appeared only in "various corporate

communications," which in the court's view meant that they were not about "specific 'good or services'" as required by the CPPA. Third, the court observed that the statements recounted above were cherry-picked from across Coca-Cola's website, an annual report, and Twitter, and the court opined that such distinct statements "cannot be cobbled together to allege one general misrepresentation."

Earth Island now appeals.

## II. ANALYSIS

Before we dive into the merits of the dispute before us, we must address Coca-Cola's threshold argument that Earth Island lacks standing to bring this suit. After we explain why Earth Island has standing to bring this suit under the CPPA, we then address the meat of this appeal, which is whether Earth Island has pled a plausible claim for relief. *See Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 544 (D.C. 2011) (adopting the "plausibility standard" as articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Because we conclude that it has, we then address Coca-Cola's alternative argument for affirmance: that the First Amendment bars this suit. We disagree with Coca-Cola on that point as well, and so we reverse the trial court's dismissal of Earth Island's suit.

## A. Earth Island has standing to maintain this suit

Coca-Cola argues that Earth Island lacks standing to bring this suit because it has not identified a class of consumers likely to be misled by Coca-Cola's statements. Coca-Cola made the same argument before the trial court, and while the trial court did not address this issue, standing raises a jurisdictional question that we are not free to bypass. *Grayson*, 15 A.3d at 229. In Coca-Cola's view, Earth Island "failed to 'identify' a single District consumer who was ever exposed to—let alone deceived by—each of the challenged statements."

"The District of Columbia's local courts, 'established by Congress pursuant to Article I, are not constitutionally bound by the requirements of Article III.'" *Animal Legal Defense Fund v. Hormel Foods*, 258 A.3d 174, 181 (D.C. 2021) ("*ALDF*") (quoting *District of Columbia v. Walters*, 319 A.2d 332, 338 n.13 (D.C. 1974)). While we nonetheless generally adhere to Article III's strictures, "that prudential judgment is subject to legislative override," and as we have previously explained, the Council has supplanted Article III's standing requirements in the CPPA. *Id.*

Under that statutory test, Earth Island has standing to maintain this suit, for the reasons we more exhaustively set forth in *ALDF*. Section 28-3905(k)(1)(D)(ii) of the D.C. Code gives public interest organizations standing to bring suit on behalf

of the District's consumers or a class of consumers if the organization has a "sufficient nexus to the interests involved of the consumer or class to adequately represent those interests." That subsection enshrines the Council's "desire to confer maximum standing to public interest organizations." *ALDF*, 258 A.3d at 184 (quotation omitted). Coca-Cola does not dispute that Earth Island is a public interest organization, or that Earth Island could bring suit on behalf of consumers deceived by Coca-Cola's sustainability statements (should such consumers exist). It instead argues that Earth Island has simply not adequately identified any such consumers who could be deceived by the statements. We disagree. Earth Island has identified a group of consumers that it alleges are likely to be deceived by Coca-Cola's misrepresentations: "the general public of the District of Columbia," or at least that subset of the population that Earth Island alleges "care[s] deeply about environmental issues."

Given the pervasive presence of Coca-Cola in modern life, and the ubiquity of the internet where Coca-Cola's statements appear, that is a perfectly reasonable group of consumers on behalf of whom Earth Island can bring suit. It is only somewhat more expansive than the consumer class in *ALDF*, which was "D.C. consumers who are targeted, and have been or will be misled, by Hormel's Natural Choice ads." *Id.* at 186. Earth Island's complaint also points to empirical data that

"[f]orty-seven percent of consumers surveyed expressed a desire to conduct business with retailers that were environmentally conscious." So it naturally follows that a considerable chunk of the District's population cares about the environmental impact of the products that it purchases, and that Coca-Cola's repeated statements about its own environmental sustainability—mostly found under the SUSTAINABILITY banner of its corporate website—may affect those consumers' choices.

While it is perhaps true that no particular consumer is likely to have seen the precise mélange of statements that Earth Island has pieced together in advancing its suit, that is neither here nor there. The particular statements that Earth Island highlights, in virtually any combination and often in isolation, convey the same basic concept: that Coca-Cola is a company that cares about, and is working meaningfully toward, environmental sustainability. If Earth Island is correct that this message runs contrary to the facts on the ground, then it has sufficiently alleged that there is class of District consumers that will be misled by those statements, so that it is has standing to maintain its suit.

### B. Earth Island plausibly states a claim for relief under the CPPA

We now get to the core of this appeal, which is whether Earth Island plausibly alleges that Coca-Cola's statements about its environmental sustainability efforts mislead consumers. Earth Island argues that it has, averring that (1) Coca-Cola is a

fundamentally unsustainable business because of its heavy reliance on single-use plastics that it has no immediate intentions of eliminating or substantially reducing; (2) Coca-Cola misleads consumers into thinking that it is serious about hitting its specific sustainability goals, when its practices say otherwise; and (3) Coca-Cola's statements create the misimpression that recycling is a viable method for substantially mitigating the harm its plastic products cause to the environment, when it is not. Each of those three iterations of Earth Island's claims are facially plausible.

Coca-Cola throws a few counterpunches that roughly track the trial court's three bases for dismissing the complaint (with some new glosses). First, it argues that the statements at issue are "classic puffery—*i.e.*, generic statements of values, goals and aspirations that cannot be objectively proved true or false, and cannot deceive a reasonable consumer." Second, it contends that the subject statements were not about any "specific 'good or services,'" though it disavows the trial court's additional gloss that statements must appear on a product label itself to be actionable (the parties agree that is too rigid a view, as do we). Third, it argues that Earth Island has improperly cobbled together a mosaic of statements to manufacture its deceptive marketing claims, whereas the proper unit of analysis is each "individual advertisement," and whether any of the above statements taken in isolation would deceive a reasonable consumer. We disagree at each step.

We start by explaining why Earth Island has pled a plausible claim for relief, and then explain why Coca-Cola's (and the trial court's) three counterpoints do not alter that conclusion.

### 1. Earth Island's claim is facially plausible

The CPPA protects consumers against false, deceptive, or unfair business practices. It is a broad consumer protection statute, meant to "assure that a just mechanism exists to remedy all improper trade practices." D.C. Code § 28-3901(b)(1); *see also Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 947-48 (D.C. Cir. 2017) (the CPPA "embraces both an expansive understanding of the conduct which constitutes a 'trade practice' . . . and provides an extensive list of unlawful trade practices" (citing § 28-3901(b)(1)). It "establishes an enforceable right to truthful information from merchants about consumer goods and services," and it is to be "construed and applied liberally" to effectuate that purpose. D.C. Code § 28-3901(c).

Under the CPPA, people and businesses are precluded from "misrepresent[ing]" any "material fact which has a tendency to mislead." D.C. Code § 28-3904(e). That prohibition extends beyond literal falsehoods and includes any omissions, "innuendo[s]," or "ambiguit[ies]" that have a tendency to mislead reasonable consumers. *Id.* There is no requirement that the "alleged misleading

statement or omission . . . be willful or intentional," at least not under the CPPA subsections that are relevant here. *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1073 & n.20 (D.C. 2008) (discussing § 3904(e) and (f)). And there is no requirement that any consumer in fact be misled by the deceptive statements. D.C. Code § 28-3904 ("It shall be a violation . . . for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged."). To state a misrepresentation claim under the CPPA, one need only plausibly allege that the "merchant 'misrepresented' or 'failed to state' a material fact" related to its good or services. *Frankeny v. District Hosp. Partners, LP*, 225 A.3d 999, 1005 (D.C. 2020) (citing *Fort Lincoln*, 944 A.2d at 1073).

Earth Island's complaint plausibly checks those boxes in three distinct ways.

First, Coca-Cola represents itself as a company that is focused on working toward a more sustainable environment. Earth Island plausibly alleges that Coca-Cola's actions in mass producing single-use plastics, with no intention of stopping or significantly curtailing that production, tell a wildly different story. Coca-Cola's continued reliance on single-use plastics on a massive scale makes it so fundamentally unsustainable that when it touts its efforts to marginally offset the very harms it inflicts on the environment, that serves only to distract consumers from

its environmental evils, or so the argument goes. And there is no dispute that consumers care about that—the statements are "material," as Earth Island substantiated in its complaint through surveys demonstrating that a significant portion of consumers care deeply about environmental issues, with roughly half of them expressing some desire to conduct business with "environmentally conscious" businesses.

To draw a comparison, Earth Island's claim is that when Coca-Cola touts its efforts to be "more sustainable," it is akin to cigarette manufacturers marketing light or low tar cigarette as if they were "healthier." Reducing the tar levels in cigarettes can make them marginally less deadly, in a trivial sense. But to suggest they are a healthier option elides the fact (without mentioning) that smoking even low tar cigarettes ranks among the most unhealthy habits a person can have, and it is not meaningfully healthier than smoking full tar cigarettes—thereby potentially misleading consumers. *See generally United States v. Phillip Morris USA Inc.*, 566 F.3d 1095, 1118-20, 1138 (D.C. Cir. 2009) (upholding finding that cigarette manufacturers made "statements they knew to be false or misleading" in marketing "light" and "low tar" cigarettes, noting "the lack of any significant health benefit from smoking light cigarettes" on account of smoker "compensation," i.e., smokers inhaling more and more frequently with light cigarettes). Analogously, when Coca-

Cola promotes its sustainability efforts, it omits the alleged fact that Coca-Cola's mass-scale production of single-use plastics make it one of the single greatest blights on our environment (regardless of its recycling efforts); that deceives consumers into believing that Coca-Cola is an environmental steward, where it is in fact an environmental scourge. Or at least those are Earth Island's claims, and on their face, there is nothing implausible about them.

Second, and relatedly, Earth Island plausibly alleges that Coca-Cola misleads consumers about the extent to which recycling can offset the environmental impacts of its mass-scale plastic production. Given how Coca-Cola promotes its "World Without Waste" initiative and trumpets how it is "[s]caling sustainability solutions," a reasonable consumer could plausibly think that its recycling efforts will put a serious dent in its environmental impacts. That is misleading, Earth Island alleges, pointing to a recent study showing that "only 8.7% of all recyclable plastics in the U.S. were recycled," yet "large producers such as Coca-Cola continue to push ineffective 'recycling' as a viable tool to assuage their environmental pollution." If those facts are borne out, then it is quite plausible that Coca-Cola misleads consumers both through its statements and by failing to qualify them, i.e., via omission. That is, when it promotes its recycling efforts, it omits the fact that those

efforts will not prevent the vast bulk of its plastic products from ending up as waste or pollution, a deception that Earth Island alleges Coca-Cola very much intends.

Third, Earth Island plausibly alleges that Coca-Cola misleads consumers into thinking it is serious about hitting the concrete benchmarks it has announced for itself, when in fact its practices show no intention of doing so. Recall that Coca-Cola's stated goals are (1) to make 100% of its packaging recyclable by 2025, (2) to use 50% recycled material in its packaging by 2030, and (3) to recycle a bottle or can for every one it sells by 2030. Earth Island plausibly alleges that Coca-Cola has not, to date, taken any serious steps toward putting those goals within reach, whereas a reasonable consumer would think Coca-Cola was taking the steps necessary to achieve its stated goals.[1] If those are indeed misrepresentations, they are about a material fact for the same reasons just given: Those benchmarks are clearly relevant to any assessment of whether Coca-Cola is an environmentally

---

[1] Earth Island posits that "recyclable" is not just a claim about product packaging itself, but about whether there is the infrastructure necessary to facilitate it being recycled in the region where it is sold. It has strong support for that proposition. The CPPA directs us to give "due consideration and weight" to the Federal Trade Commission's interpretation of what constitutes an unfair or deceptive trade practice, and the FTC's regulations instruct that "[m]arketers should clearly and prominently qualify recyclable claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to consumers. . . . When recycling facilities are available to less than a substantial majority of consumers or communities where the item is sold, marketers should qualify all recyclable claims." 16 C.F.R. § 260.12(b).

conscious business, and Earth Island has more than plausibly alleged that consumers care about that.

To be very clear, we do not offer any view about the veracity of Earth Island's claims. We do not presume to know what reasonable consumers understand a company to mean when it claims that it is working to be "more sustainable" or the like. For all we know, reasonable consumers would immediately dismiss that type of speech as vacuous corporate jargon, not to be relied upon. But that is not obviously true; the concerted efforts that companies like Coca-Cola make to cultivate an image of being environmentally friendly strongly suggests that even their vague assurances have a real impact on consumers. Further, even if reasonable consumers take Coca-Cola's statements to mean that it is taking substantial strides to improve the environment, it is not at all obvious at this stage of the proceedings whether Coca-Cola's efforts on the ground align with those statements. But those are questions of proof that cannot be settled at the motion to dismiss stage. For now, Earth Island has done enough to state a plausible claim for relief.

### 2. Coca-Cola's counterarguments are unpersuasive

Coca-Cola makes three counterarguments, largely tracking the trial court's bases for dismissing Earth Island's suit: (1) its statements are "classic puffery," incapable of misleading consumers; (2) its statements were not about its "goods or

services," but about corporate ethos, and (3) Earth Island improperly targets a mosaic of statements, where the proper question is whether any individual statement is misleading in isolation. Both Earth Island and its amicus, the District of Columbia, disagree with each point. We address these points in turn, with the bulk of our discussion focused on the first point.

### a. The subject statements are not clear puffery

Puffery is a legal doctrine that posits some statements are of a type that no reasonable consumer would rely upon them, because there is a certain amount of bluster or "sales talk" that is to be expected when pushing one's wares. When a diner advertises "World's Best Cup of Coffee," for instance, nobody but Buddy the Elf would take that literally, and the law chalks that up to puffery. As one leading treatise more pejoratively put it, "[t]he puffing rule amounts to a seller's privilege to lie his head off, so long as he says nothing specific, on the theory that no reasonable man would believe him, or that no reasonable man would be influenced by such talk." Prosser & Keeton on Torts § 109 at 757 (5th ed. 1984).[2]

---

[2] One judge of this court has described puffery as the "kind of simplistic braggadocio" to be expected of a salesman, as captured by this excerpt from Gilbert & Sullivan's Ruddigore, Act I (1887): "If you wish in the world to advance / Your merits you're bound to enhance / You must stir it and stump it / And blow your own

The puffery "rule has not been a favored one," and except in rare cases, the question of whether a statement is an "actionable misrepresentation" or mere puffery must be "left to the jury." *Id.*; *see also Hagedorn v. Taggart*, 114 A.2d 430, 431 (D.C. 1955) ("[W]hether statements . . . amount to mere 'puffing' . . . depends upon the surrounding circumstances, the manner in which they are made, and the ordinary effect of the words used. Ultimately, this is a question to be resolved by the trier of the facts."); *Center for Inquiry Inc. v. Walmart, Inc.*, 283 A.3d 109, 121 (D.C. 2022) ("[W]hether a trade practice is misleading under the CPPA generally is 'a question of fact for the jury and not a question of law for the court.'" (quoting *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 445 (D.C. 2013))); *Pennsylvania v. Golden Gate Nat'l Senior Care, LLC*, 194 A.3d 1010, 1024 (Pa. 2018) ("State and federal courts are united in the principle that the determination as to whether a statement is deemed puffery is a question of fact to be resolved by the finder of fact except in the unusual case where the answer is so clear that it may be decided as a matter of law."); *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 98 (2d Cir. 2023) (Statements that "are not so patently hyperbolic that it is implausible for a reasonable consumer to be misled" must "be subject to a 'fact-intensive inquiry' on how a reasonable buyer would be affected" that "'typically should not be resolved on a

---

trumpet / Or trust me, you haven't a chance." *Banks v. D.C. Dep't of Consumer & Reg. Affs.*, 634 A.2d 433, 441 (D.C. 1993) (Schwelb, J., concurring).

motion to dismiss.'" (quoting *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 60 (2d Cir. 2022))); *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ("[T]he reasonable consumer standard . . . raises questions of fact that are appropriate for resolution on a motion to dismiss only in 'rare situations.'" (quoting *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008))).

One of the few examples of the puffery doctrine at play in this court's jurisprudence is *Pearson v. Chung*, where a customer argued under the CPPA that his drycleaner's "Satisfaction Guaranteed" sign was "an unconditional guarantee of satisfaction," so that "a merchant is required to satisfy a consumer's demand for lawful compensation . . . *for any amount of money*." 961 A.2d 1067, 1075 (D.C. 2008). That case came to this court only after a trial in which Pearson sought $67 million for a pair of pants that his drycleaner allegedly lost—they had reimbursed him for the value of the pants, $150, which was not to Pearson's satisfaction—and we upheld the verdict in favor of the drycleaner. We did so on the basis that the trial court, when acting as the *factfinder* (not ruling as a matter of law), showed "basic common sense" by "reject[ing] [the customer's] unlimited view" of what the sign meant. *Id*. We also cited another case that described "quality satisfaction guaranteed" as "a classic example of commercial 'puffery.'" *Id.* at 1076 (quoting

*Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d 791, 805-06 (W.D. Wisc. 2006)).

To unpack *Pearson* further, we did not in fact hold that the plaintiff's claim was barred as a matter of law under the puffery doctrine (as Coca-Cola now suggests). That question was not before us. Still, we have little doubt that outright dismissal would have been an appropriate result under the circumstances of that case if Pearson's claim depended entirely on reading "Satisfaction Guaranteed" to mean any customer demand must be satisfied: that would be absurd, and no reasonable consumer would interpret the sign to oblige a business to satisfy even the most patently unreasonable demands of a customer, like asking for millions of dollars to compensate for a lost pair of pants. But we likewise have no doubt that puffery would not have been a legal bar to a suit had Pearson advanced a more tenable reading of that sign, perhaps as a guarantee that the drycleaners would reimburse him for the value of lost items (they had already done that), or that they would not charge a customer for services they were dissatisfied with. If that were his argument, he would have raised a plausible claim—and a question for the factfinder—about what reasonable consumers would understand "Satisfaction Guaranteed" to mean.

This is not the rare case where we can say that no reasonable consumer would rely on Coca-Cola's representations that it "act[s] in ways to create a more

sustainable and better shared future," including for "our planet," as some assurance that Coca-Cola is not the environmental menace that Earth Island alleges it is. Nor can we say that no reasonable consumer would understand Coca-Cola's statements to mean that recycling is a viable method for combatting its mass production of plastics, which Earth Island plausibly alleges is contrary to fact. Nor can we say that no reasonable consumer would believe that Coca-Cola is taking the steps necessary to hit the environmental benchmarks it has set for itself in 2025 and 2030, which Earth Island again asserts is counterfactual. In each of these three iterations, Earth Island has stated a plausible claim where any question of puffery is for the factfinder to resolve.

Coca-Cola seeks to evade this conclusion by floating two more rigid approaches to puffery, neither of which withstands scrutiny. It first posits, citing to *Pearson*, that where a statement's "truth or falsity . . . cannot be precisely determined," it is puffery. 961 A.2d at 1076 (quoting *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245 (Wisc. 2004)). That is too rigid a view. What *Pearson* actually said is that puffery includes "the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of

which cannot be precisely determined."[3]  *Id.* (quoting *Tietsworth*, 677 N.W.2d at 245).  You cannot divorce the second part of that definition from the first (and more critical) part of it, as Coca-Cola mistakenly does; businesses cannot insulate themselves from suit simply by avoiding concrete claims.  Vague and ambiguous statements, incapable of being strictly true or false, may yet be actionable as misrepresentations—a point this court has already made clear.  *See Remeikis v. Boss & Phelps, Inc.*, 419 A.2d 986, 990 (D.C. 1980) ("[A] statement literally true is actionable if made to create a false impression," even under the more exacting

---

[3] There are at least two distinct types of puffery.  There are (1) "general claim[s] of superiority . . . so vague that [they] can be understood as nothing more than a mere expression of opinion," and then there are (2) "exaggerated, blustering, and boasting statement[s]," quite capable of being adjudged false, but "upon which no reasonable buyer would be justified in relying."  1 False Advertising and the Lanham Act § 5.02 (2023 ed.) (M. Bender) (quoting *Time Warner Cable, Inc. v. DirecTV, Inc.*, 497 F.3d 144, 160 (2d Cir. 2007)).  An example of the first type of puffery is: "Better Ingredients.  Better Pizza."  *See Pizza Hut, Inc. v. Papa John's Int'l Inc.*, 227 F.3d 489, 498-99 (5th Cir. 2000) (holding that slogan alone was non-actionable puffery, though it became actionable when coupled with further representations, as discussed in the next footnote).  An example of the second type of puffery is "Red Bull gives you wings"—that is clearly false, but no reasonable consumer would take it literally.  Still, even that statement might be actionable if it gave reasonable consumers the impression that Red Bell provided significant benefits over a cup of coffee or caffeine pill, at least if that were not the case.  *See* Pete Brush, *Red Bull for Everybody! Judge Oks $13M False Ad Settlement*, Law360 (May 1, 2015) (describing contours of multi-million-dollar Red Bull settlement regarding this slogan).  That goes to show that statements that might be deemed puffery if interpreted to mean one thing in one context, might very well be actionable misrepresentations if taken to mean a different thing in a different context.  The doctrine is not conducive to hard-and-fast rules, and typically raises a question for the factfinder.

standards for common law fraud.); *see also Jefferson v. Collins*, 210 F. Supp. 3d 75, 89 (D.D.C. 2016) (same in CPPA context). And the plain text of the CPPA makes that similarly clear, as it prohibits not just false statements, but those that have any "tendency to mislead," including by "fail[ing] to state a material fact," or "us[ing] innuendo and ambiguity as to a material fact." D.C. Code §§ 28-3904(a)-(h).

Coca-Cola counters with heavy reliance on the analysis in *Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630 (10th Cir. 2022). In that case, the Tenth Circuit overturned a jury verdict finding that a bakery engaged in false advertising when it billed baked goods it sold in Utah as "local," despite the fact that they were made exclusively out-of-state, as far away as Alaska. *Id.* at 642. While a jury found that to be willful false advertising—concluding that the bakery's "local" tagline was deliberately "false or misleading"—the Tenth Circuit reversed. *Id.* at 642-43. The court concluded that the word "local" was "an indeterminate and unverifiable adjective," so it was not any "description of fact," because "the word local cannot be 'adjudged true or false in a way that admits of empirical verification.'" *Id.* at 643-45 (quoting *Am. Ital. Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (8th Cir. 2004)).

We firmly reject that analysis. It is of course true, as that court stressed, that the word "local" has a range of meanings. But it is just as obviously true that some

things fall outside that range of meanings, often depending on context. To illustrate, here in the District, if somebody says they support the "local" NFL team, you would most naturally think they are supporters of the Washington Commanders, though they might also fairly be referring to the Baltimore Ravens, given that Baltimore is less than forty miles away (i.e., there's a range that "local" might fairly apply to). But if they are in fact fans of the Los Angeles Rams—a team that hails from more than two thousand miles from here (just as some of the baked goods in *Bimbo Bakeries* came from Alaska, more than two thousand miles away from Utah)—then they have undoubtedly deceived you. They are, under no reasonable understanding of the word, a fan of the "local" NFL team. So there is nothing unreasonable about a jury's conclusion that the word "local," when used to describe baked goods, did not fairly describe baked goods that were made exclusively out-of-state. Nor do we share *Bimbo Bakeries*'s hostility toward consumer survey evidence as one viable evidentiary tool for discerning how reasonable consumers understand various advertisements. *Contra id.* at 646 ("If a statement is not one of fact, it is legally irrelevant whether consumers agree with it.").

Whatever persuasive force *Bimbo Bakeries* has in interpreting the federal Lanham Act,[4] it is incompatible with the District's CPPA. The CPPA does not adopt the "caveat emptor" approach to misleading advertisements that the *Bimbo Bakeries* court seemed to favor. When companies market their products in ways that actually deceive their consumers, they cannot take shelter in having told no literal falsehoods; their misleading advertisements are nonetheless actionable under the CPPA. The question in *Bimbo Bakeries* would have been for a factfinder to decide under our jurisprudence.

Coca-Cola's second crack at a rigid rule tracks the trial court's analysis: that when "statements are aspirational in nature," sans any "promises or measurable datapoints that would render [them] true or false," they are not actionable under the

---

[4] We doubt it has much, as we find the Fifth Circuit's analysis in *Papa John's*, discussed *supra* n.3, far more cogent. That case held that even a claim as vague and opinion-laced as "Better ingredients. Better Pizza." could be actionable when coupled with a comparison to a competitor's ingredients that were not discernibly different. *Papa John's*, 227 F.3d at 499-501. Whether one ingredient is better than another is of course an unquantifiable opinion, so that a merchant is free to market their products as better than another's without worry. But Papa John's crossed the line into actionable misrepresentations when it coupled that slogan with statements comparing its "cold or slow-fermentation method" for making its dough to Pizza Hut's "frozen dough method," and further compared its "fresh pack" method for making sauce to Pizza Hut's "sauce from remanufactured tomato paste." *Id.* at 500-01. That comparison implied that its method for making dough and sauce yielded some discernible benefits over Pizza Hut's methods, despite there being "no quantifiable difference between" the methods. *Id.*

CPPA. Like its first attempt, this is also too sweeping a view. An aspirational statement can be reasonably "interpreted to be a representation about the defendant's present intent . . . to act as stated." 3 Dobbs *et. al*, The Law of Torts § 678 at 690 (2d ed. 2011); W. Page Keeton, *Fraud—Statements of Intention*, 15 Tex. L. Rev. 185, 185 (1937) ("The state of a man's mind is as much a fact as the state of his digestion. . . . A misrepresentation as to the state of a man's mind is, therefore, a misstatement of facts." (quoting *Edgington v. Fitzmaurice*, 29 Ch.D 459, 483 (1885)). So when Coca-Cola says it "act[s] in ways to create a more sustainable and better shared future," that claim is perfectly capable of being adjudged misleading if Coca-Cola is in fact not acting in that way.

To illustrate the point, imagine an obese husband who assures his wife that he is going to "do what it takes to lose a lot of weight this year." In fact, he never had any intention of modifying his diet or exercise regime in any way (though he sincerely hoped the weight might shed itself), and halfway through the year he repeats his assurances that he is "doing what it takes to lose a lot of weight" despite having taken no steps to lose any weight at all. Of course his wife could reasonably feel misled by her husband's assurances: (1) it was implicit in them at the start of the year that he at least intended to take some steps that could feasibly achieve the stated

goal, but he never harbored those intentions; and (2) when he repeated his assurances that he was doing what it takes midway through the year, that was just a flat-out lie.

That is precisely the type of misrepresentation that Earth Island alleges here. It is not that Coca-Cola has failed to hit some stated goals—that alone could not support a misrepresentation claim, *see* Dobbs, *supra*, § 678 at 690—but that it has never even intended to do anything that could achieve them. That is a viable misrepresentation claim because Coca-Cola's statements "can be interpreted to be a representation about [its] present intent" to meaningfully improve its environmental sustainability "rather than a mere promise of future action." *Id.* Earth Island alleges that Coca-Cola has no intention of substantially cutting back on its mass production of single-use plastics, so that its business is flatly incompatible with its claim that it "act[s] in ways to create a more sustainable and better shared future."[5] While Coca-Cola's recycling initiatives are surely not nothing, Earth Island alleges that they are insubstantial, on par with the aforementioned husband eating a salad instead of his usual cheeseburger for just one meal. Perhaps that is a step toward losing a lot of

---

[5] Earth Island makes the semantic point that "Coca-Cola's claims are ***not*** couched as mere aspirations," but are claims that "right now, it ***acts*** to create a more sustainable future." We do not think anything turns on the semantic point; whether Coca-Cola's various statements are properly categorized as aspirational or not, they might reasonably give rise to a belief that it is acting in a way (or at least intends to act in a way) to meaningfully further its stated goals, and Earth Island plausibly alleges it is not doing, or even intending to do, that.

weight, but if that is the full extent of his anticipated efforts—and then it's cheeseburgers the rest of the year—his wife would be right to feel misled by his assurances. Not because he failed to reach his goals, but because he never had any intention of taking—and never took—any steps that might possibly achieve them.

### b. The subject statements are about Coca-Cola's goods and services

Coca-Cola next argues that the subject statements are not actionable under the CPPA because they do not relate to "goods or services."[6] Coca-Cola argues that the statements in question "tell consumers nothing about the 'goods' they will 'receive' if they patronize Coca-Cola, or the terms on which they will 'receive' those 'goods,'" but only "describe Coca-Cola's values, aspirations and goals *as a business*." We disagree. Section 28-3901(a)(7) of the CPPA defines "goods and services" as "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process." Coca-Cola's packaging is part of the products that

---

[6] While some provisions of the CPPA specifically require that any misleading statements be about "goods or services," *see, e.g.*, § 3904(a), (d); *Floyd v. Bank of Am. Corp.*, 70 A.3d 246, 254 (D.C. 2013) (discussing those subsections in particular), other CPPA provisions do not contain that express limitation, *see, e.g.*, § 3904(e), (f). We will assume, without deciding, that Coca-Cola's statements had to relate to its goods or services to be actionable under any subsection of § 3904, as strongly suggested by the CPPA's overarching purpose. *See* § 3901(c) ("This chapter establishes an enforceable right to truthful information from merchants about consumer goods and services.").

it sells, and the environmental impact of how it creates that product, and what becomes of it, are qualities of the product itself under the CPPA's broad approach to goods and services.

The statements in question describe Coca-Cola's efforts to change both the processes by which its packaging is manufactured and how that packaging can be processed after the consumer discards it. Its statements about producing materials in a more sustainable manner are statements about its economic outputs at the production stage; its statements about recycling discarded packaging are statements about the disposal of its economic outputs. Just as the statement "this bottle is recyclable" would clearly be a statement about the product, so too is the statement "we are working to make this bottle be even more recyclable." If Coca-Cola makes misleading statements about whether its products are produced in a sustainable way and can be effectively recycled, then those statements are about "goods and services" as the term is broadly defined in the CPPA.

### c. The statements can be properly considered in the aggregate

Coca-Cola also argues, as the trial court reasoned, that a CPPA misrepresentation claim cannot be based on an amalgamation of statements. In the trial court's view, that would lead to "rudderless" discovery and a trial where "each

side cherry-picked events, documents, and actions all over the world over several decades to state or negate how the defendant entity 'represented' itself."

That is a valid concern, but it is rather overstated here, as Earth Island's suit seeks only declaratory and injunctive relief (plus costs and attorney's fees) and not any damages for statements that Coca-Cola had made in the past. Its suit targets only those statements that Coca-Cola is still making today—they generally remain on Coca-Cola's website under a prominent "SUSTAINABILITY" banner, or on its Twitter feed. Because Earth Island has effectively limited its claims to those representations that Coca-Cola is still making about its sustainability practices today, the trial court could quite reasonably tailor discovery and trial accordingly, with a narrow focus on the statements that Coca-Cola continues to propagate today through channels (primarily, the internet) that a District consumer might reasonably come across. That would substantially eliminate the trial court's concern about getting into "actions all over the world over several decades."

As for the representations that Coca-Cola continues to make, we agree with Coca-Cola to the limited extent that Earth Island cannot maintain a CPPA claim that consists of a grab-bag of statements that no reasonable consumer would ever be likely to see in combination. *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247-48 (11th Cir. 2002) (where misrepresentation

claim focused on a campaign consisting of three advertisements, trial court improperly assumed "that consumers will be exposed to every advertisement in a campaign" absent any evidence to that effect).[7] And we similarly agree with Coca-Cola that whatever combination of statements remain would need to be viewed in their full context, and not plucked from their broader messages. But neither point is a serious problem for Earth Island in this posture, where even if we narrow our focus to just the statements that appear on Coca-Cola's website—which there is every reason to think would be viewed in combination—they adequately support Earth Island's CPPA claims at the pleading stage.

Beyond that, we will not prejudge the likelihood that any particular consumer might have viewed those statements in combination with Coca-Cola's 2019 sustainability report (which appears on Coca-Cola's website), the subject tweets that Earth Island similarly relies upon, or the one statement from the American Beverage Association's website. Those questions raise evidentiary issues, not something that

---

[7] We do not agree with the sentiment, expressed in footnote 4 of *Johnson & Johnson*, that a consumer who reads one ad on Monday and a second ad on Thursday would not (as a matter of law) view them in light of one another. 299 F.3d at 1248 n.4. A factfinder could certainly draw that conclusion, but it is not bound to. Businesses can drive points home through repetition or supplementation, and where a consumer sees Coca-Cola billing itself as sustainable in one ad on a Monday, and then sees a different ad on Thursday with a similar message, the mere repetition of a point can have a cumulative effect on a reasonable consumer.

can be resolved on the pleadings. It is plausible enough that a consumer curious about Coca-Cola's environmental impacts would come across the variety of statements relied upon by Earth Island through some casual Googling.

**C. The First Amendment is not a bar to Earth Island's suit**

Finally, Coca-Cola asks that we affirm the trial court's dismissal of this suit on the alternative grounds that it is precluded by the First Amendment. Its amici—the Chamber of Commerce of the United States, the Consumer Brands Association, and the National Association of Manufacturers—press the same point. They argue that Coca-Cola's speech "encompasses political activity and advocacy on important matters of public concern," so that it falls in the First Amendment's heartland. We disagree.

"The First Amendment 'does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely.'" *Meta Platforms, Inc. v. District of Columbia*, 301 A.3d 740, 758 (D.C. 2023) (quoting *Va. State Bd. Of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 772 (1976)). The speech that Earth Island targets is Coca-Cola's commercial speech about its goods and services; it is alleged that Coca-Cola cultivates a sustainability narrative in an effort to sell products. Because Earth Island plausibly alleges that commercial speech would mislead reasonable consumers, Coca-Cola's First

Amendment claim is a non-starter. *Id.*; *Ibanez v. Florida Dep't of Business*, 512 U.S. 136, 142 (1994) ("False, deceptive, or misleading commercial speech may be banned," consistent with the First Amendment). To be sure, the First Amendment protects a company's "liberty to discuss publicly and truthfully all matters of public concern." *Consolidated Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 534 (1980) (quoting *Thornhill v. Alabama*, 310 U.S. 88, 101-02 (1940)). So if Earth Island is ultimately successful in this suit, the court would have to take care in fashioning any relief so as not to intrude on Coca-Cola's First Amendment rights. But that is a topic for another day. The fact that some remedy could conceivably intrude on Coca-Cola's First Amendment rights is no basis to preclude this suit at its inception.

## III. CONCLUSION

For the foregoing reasons, we reverse the dismissal of Earth Island's complaint, and remand the case for further proceedings.

*So ordered.*